# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| **INTELLECTUAL VENTURES I LLC** and **INTELLECTUAL VENTURES II LLC,**<br><br>        **Plaintiffs,**<br><br>    *v.*<br><br>**HEWLETT PACKARD ENTERPRISE CO.,**<br>        **Defendant.** | **6:21-cv-596-ADA** |

## ORDER DENYING DEFENDANT HEWLETT PACKARD ENTERPRISE COMPANY'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a) [ECF No. 38]

Came on for consideration this date is Defendant Hewlett Packard Enterprise Company's ("HPE's") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a). ECF No. 38 (the "Motion"). Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC ("IV") filed an opposition on April 4, 2022, ECF No. 61, to which HPE filed a reply on April 21, 2022, ECF No. 67. After careful consideration of the Motion, the Parties' briefs, and the applicable law, the Court **DENIES** HPE's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a).

## I. BACKGROUND

IV filed a complaint against HPE in this Court on June 11, 2021, alleging infringement of four patents generally directed to cloud computing and virtualization. *See* ECF No. 1. On December 3, 2021, IV filed an amended complaint dropping three of the four asserted patents, leaving only U.S. Patent No. 6,779,082 (the "'082 patent") and one set of accused products: the SimpliVity solutions. *See* ECF No. 34 (the "FAC"). SimpliVity is a "hyperconverged infrastructure platform," a type of high-performance data storage solution. *Id.* at 14.

IV is incorporated in Delaware and its principal place of business is in Bellevue, Washington. *Id.* ¶ 1. HPE is incorporated in Delaware and, according to HPE, it is "in the process of moving its headquarters from California to Houston, Texas and expects to complete the move by Spring 2022." ECF No. 38 at 3. IV alleges that HPE employs roughly 4,876 people in Texas. ECF No. 61 at 1.

On October 8, 2021, HPE filed its Motion to transfer venue to the District of Massachusetts ("DMA") under 28 U.S.C. § 1404(a), the purported location where SimpliVity was "originally developed." ECF No. 38 at 3. The Court **DENIES** that Motion.

## II. LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Title 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the [transfer] destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources

2

of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*. The weight the Court gives to each of these assorted convenience factors will necessarily vary from case to case. *See Burbank Int'l, Ltd. v. Gulf Consol. Int'l, Inc.*, 441 F. Supp. 819, 821 (N.D. Tex. 1977). A court should not deny transfer where "only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum." *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. While "clearly more convenient" is not explicitly equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show that that factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

## III. ANALYSIS

### A. Venue and Jurisdiction in the Transferor Forum

This Court finds, and IV does not contest, that this Action could have been brought in the DMA. *See* ECF No. 38 at 6.

### B. Private Interest Factors

#### 1. Relative Ease of Access to Source of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-00372-ADA, 2019 U.S. Dist. LEXIS 171102, at *5 (W.D. Tex. Sept. 10, 2019). This factor relates to the relative—not absolute—ease of access to non-witness evidence. *See In re Radmax*, 720 F.3d at 288; *In re Apple*, 979 F.3d at 1339. And "the movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer." *In re Apple*, 979 F.3d at 1340. In *Radmax*, the Fifth Circuit held that, though the distance between two divisions was slight, because all the documents and physical evidence were in the transferor division, this factor favored transfer. 720 F.3d at 288.

The Fifth Circuit has held that, even in the context of electronic documents that can be accessed anywhere on earth, this factor is not superfluous. *See Volkswagen II*, 545 F.3d at 316; *see also In re Dish Network L.L.C.*, No. 2021-182, 2021 U.S. App. LEXIS 31759, at *6 (Fed. Cir. Oct. 21, 2021). Though having persistently characterized that holding as antiquated in the setting of a modern patent dispute, this Court will continue to analyze this factor with a focus on the location of: physical documents and other evidence; and the hardware storing the relevant electronic documents. *See, e.g.*, *Bluebonnet Internet Media Servs., LLC v. Pandora Media, LLC*, No. 6-20-CV-00731-ADA, 2021 U.S. Dist. LEXIS 137400, at *7 & n.1 (W.D. Tex. July 22, 2021). The Federal Circuit has recently held, however, that it is error not to consider: "the location of

document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 U.S. App. LEXIS 33789, at *7 (Fed. Cir. Nov. 15, 2021).

HPE asserts that the accused SimpliVity solutions were "mostly developed before HPE acquired SimpliVity" in February 2017. ECF No. 38 at 3. That development was purportedly based in Massachusetts, with some other development work occurring in North Carolina, Virginia, New York, and possibly Colorado. *Id.* The development in Massachusetts was conducted by "employees who continue to live and work there." *Id.* at 7. After HPE acquired SimpliVity Corp. in February 2017, "some SimpliVity employees" who worked on the accused functionality became HPE employees, and most of those still reside in Massachusetts. ECF No. 38 at 3. HPE specifically identifies Tom Olson and Brad Glade as Massachusetts residents and HPE employees involved in the development of the accused functionality. *Id.* Based on these events, HPE has concluded that "paper and local copies of HPE technical documents, to the extent they exist, would be in Massachusetts." ECF No. 67 at 2.

HPE represents that SimpliVity development was moved to an HPE team in Bangalore, India in the second half of 2020. ECF No. 38 at 4, 7. But HPE contends that knowledgeable developers remain in the U.S., like Mr. Olson and Mr. Glade in Massachusetts, as well as one former developer in San Jose and two non-development engineers in New York and North Carolina. *Id.* at 4. There is also a U.S.-based customer support team with members in Massachusetts, Colorado, and North Carolina. ECF No. 38 at 4. HPE expects that most witnesses and documents relevant to the accused functionality will come from Massachusetts and India. *Id.* HPE concedes, however, that, at the time of HPE's acquisition of SimpliVity, there was "one non-development release engineer and that release engineer's manager" located in Texas. *Id.* at 3.

IV argues that HPE's 30(b)(6) witness, Avri Faibish, "could not identify any proof located in Massachusetts but stated that servers containing relevant documents are located in Texas, Colorado, Oregon, or are otherwise hosted by third parties and their location is unknown." ECF No. 61 at 3. Specifically, finance and sales documents are housed by servers in Austin and Houston. *Id.* Technical documents are purportedly in Fort Collins, Colorado. *Id.* Documents relating to GreenLake for SimpliVity—a program in which SimpliVity is associated with equipment HPE provides "to its customers, which is installed at the customer's site or a customer-selected colocation site," ECF No. 61-10 at 24—are ostensibly stored in Oregon. The location of licensing, sales, and marketing documents are unknown. ECF No. 61 at 3.

IV also alleges that, in performing "IP address tracing using the base URL of storage related SharePoint links present in HPE's document production reveals that some or all of HPE's SharePoint servers are located in Houston, Texas or possibly California." *Id.* And "there are vast troves of SimpliVity related technical documents, tutorials, software, firmware, and bug fixes located at support.hpe.com, which resolves to servers in Houston." *Id.* IV contends that HPE stores yet other documents relating to its storage products, accessed through HPE's "Brand Central" portal, on servers in Houston. ECF No. 61; ECF No. 61-1 ¶¶ 10, 11. HPE summarily dismisses these documents as "irrelevant," contending that the only relevant documents in this District are electronic financial and sales information. ECF No. 67 at 2.

In IV's opinion, HPE has taken an overly narrow interpretation into what the accused functionality is and, therefore, what information is relevant to this Action. Mr. Olson provided a declaration in support of HPE's Motion, in which he testifies that he "understand[s] that the accused functionality generally relates to the control path and the data path." ECF No. 38-3 at 2. During his deposition, Mr. Olson testified that he obtained this understanding from HPE's counsel.

6

ECF No. 61-11 at 24:2–9. Mr. Olson continued that SimpliVity has functionality beyond the control path and data path, to include "purpose built hardware," "components that allow the control path and data path to interact with the hypervisor on the . . . shared hardware for the platform itself which is different than a purpose built hardware that we add to the hardware." *Id.* at 24:10–25:13. IV represents that its infringement contentions accuse "functions performed by the hardware platform itself via purpose-built hardware and standardized HPE server infrastructure" and the "management plane." ECF No. 61 at 4. Given Mr. Olson's testimony, IV's infringement contentions, and the breadth of Federal Rule of Civil Procedure 26(b)'s relevance standard, *see FTC ex rel. Yost*, No. EP-19-CV-196-KC, 2020 U.S. Dist. LEXIS 135343, at *14 (W.D. Tex. Apr. 14, 2020) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)), the Court is unwilling to credit HPE's naked labeling of the electronic evidence IV has identified as "irrelevant."

The Court finds that this factor is neutral given that there are likely relevant documents that are near both the DMA and this District. As to evidence in or around the DMA, IV concedes that its relevant documents are located with its counsel in Massachusetts; the Court accords those documents weight, while also being cognizant that most of the relevant evidence will come from the accused infringer, HPE. *See In re Nintendo Co.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009); *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). The Court does not, however, accord any weight to supposed "paper and local copies of HPE technical documents" upon which HPE relies because HPE has not expressed any confidence in their existence (despite being best positioned to know of their existence). *See* ECF No. 67 at 2 ("That is why paper and local copies of HPE technical documents, *to the extent they exist*, would be in Massachusetts." (emphasis added)). Furthermore,

Mr. Faibish, one of HPE's 30(b)(6) witnesses, was not aware of any electronic documents located in Massachusetts. *See* ECF No. 61 at 3.

Yet the Federal Circuit has directed this Court to consider "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google LLC*, 2021 U.S. App. LEXIS 33789, at *7. To be sure, Mr. Olson and Mr. Glade still reside in Massachusetts and certainly created and maintained documents regarding SimpliVity in their prior roles. But HPE has not given this Court much reason to find that Mr. Olson and Mr. Glade's location in Massachusetts bears on the ease of retrieval of documents relevant to SimpliVity, a product Mr. Olson and Mr. Glade have not worked on in years and that is being maintained and developed by an HPE team in India. The Court presumes that the team in India likely has convenient access to technical documents relevant to SimpliVity, but it has a harder time concluding the same for HPE personnel no longer involved with SimpliVity who are half-a-world away from the current SimpliVity team.

Mr. Olson attested that "HPE technical documents related to SimpliVity are located primarily with the persons that design, develop, and test it." ECF No. 38-3 ¶ 8. Curiously, Mr. Olson—who no longer designs, develops, and tests SimpliVity—did not attest that he, or Mr. Glade, currently possess any such documents in Massachusetts. Indeed, he did not even attempt to identify categories of relevant documents that may be in his or Mr. Glade's possession. Mr. Olson further attested that "HPE technical documents belonging to these [development] teams are also located on shared drives that can be accessed by HPE employees with appropriate credentials." *Id.* He did not attest that he, or Mr. Glade, have such credentials. These omissions do not inspire confidence that it is easier to access relevant SimpliVity documents in Massachusetts. Again, it is likely that the HPE team in India has convenient access to relevant technical document. The Court

is hesitant to find, however, that relevant technical documents can be accessed easier from Massachusetts relative to, for example, HPE's headquarters in Houston. Yet, the Court will accord some small weight to Mr. Glade and Mr. Olson's location in Massachusetts in recognition of some small probability that relevant technical documentation they created is more conveniently accessed from their computers.

As to evidence in or around this District, HPE's 30(b)(6) witnesses, Mr. Faibish, testified that relevant electronic HPE documents are stored in servers in Texas, Colorado, and Oregon. ECF No. 61 at 3; *see also* ECF No. 61-3 at 40:2–41:18 (testimony from Mr. Faibish that financial documents are retained on DXC-owned servers in Texas); *id.* at 25–28, 35, 40–43, 68. The Court accords the location of the Texas servers weight, as their proximity to this Court may bear on relative ease of access to documents therein. (It is also worth noting that the custodian charged with SimpliVity's financial reporting lives in Mexico, ECF No. 61 at 8–9, which is nearer this District than the DMA.) The documents stored in Colorado and Oregon are likely credited, but to a lesser degree, given their increased distance from this District.

IV was also able to provide a colorable explanation for why other electronic documents, like support information for SimpliVity products, are located in Texas. ECF No. 61 at 3. The Court does not accord the location of these electronic materials great weight because some of the referenced documents appear to be publicly available. *See* ECF Nos. 62-5, 62-6 (identifying public installation guides). And also because IV has not been able to pinpoint the location of these documents with great certainty. ECF No. 61 at 3 ("[S]ome or all of HPE's SharePoint servers are located in Houston, Texas *or possibly California*." (emphasis added)).

SimpliVity was developed in Massachusetts but development has since moved offshore to India. HPE has most of the relevant documents and most of the technical documents will,

presumably, be easiest accessed in India. It is difficult to conclude that the past development of the SimpliVity product in Westborough, Massachusetts—out of an office that no longer exists—provides clues as to the current location of relevant, physical evidence. And there is no indication HPE was not able to locate such evidence with any certainty. Moreover, as to electronic evidence, HPE's 30(b)(6) witnesses, Mr. Faibish was able to identify the location of electronic documents with some certainty—but none are located in Massachusetts. He pinpointed technical documents as being stored in Colorado, nearer this District. He also testified that financial information is maintained in Texas—the state where HPE's headquarters resides. The only documents in Massachusetts, as far as this Court can discern with any degree of certainty, are IV's documents. Weighing all this evidence together, the Court finds that this factor is neutral.

### 2. Availability of Compulsory Process

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 U.S. Dist. LEXIS 171102, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014). When "there are several witnesses located in the transferee forum and none in the transferor forum," this factor favors transfer. *In re Google*, No. 2021-171, 2021 WL 4592280, at *5 (Fed. Cir. Oct. 6, 2021).

The Federal Circuit has held that, under Fifth Circuit law, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018); *see also In re Hulu, LLC,* No. 2021-142, 2021 U.S. App. LEXIS 22723, at *10 (Fed. Cir. Aug. 2, 2021) ("[W]here . . . the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness."). Further, this Court cannot "discount" third-party "entities" having pertinent information in the transferee venue "just because individual employees were not identified." *In re Apple Inc.*, No. 2021-181, 2021 U.S. App. LEXIS 33788, at *8 (Fed. Cir. Nov. 15, 2021) (quoting *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020)).

IV does not dispute HPE's contention that one of the four named inventors of the '082 patent, Andy Spitzer, lives in Andover, Massachusetts. ECF No. 38 at 7; ECF No. 61 at 5. But IV states that his testimony would be duplicative of the first named inventor, Dr. Eric Burger, who has expressed a willingness to travel to this District to testify. ECF No. 61 at 5. HPE retorts that it is "entitled to question at trial any inventor whose testimony can be obtained by subpoena." ECF No. 67 at 3. The Court agrees with HPE, finding that Mr. Spitzer's presence in Massachusetts weighs in favor of transfer.

IV further argues that there are over thirty former SimpliVity employees located in the WDTX and through Texas "that have objectively verifiable and relevant knowledge of the accused products." ECF No. 61 at 5. In its briefing, IV specifically identifies McLeod Glass, former VP and general manager of HPE SimpliVity Hyperconverged Solutions from 2017–2020 as living in Spring, Texas. *Id.* IV alleges that Mr. Glass was "specifically responsible for the entirety of the

financial performance of SimpliVity products." *Id.* "[H]e also oversaw all product management, technical marketing and engineering, software engineering, solution architecture, marketing, sales, pre-sales, technical support, GTM programs and product operation functionalities specific to the SimpliVity products." *Id.* IV contends that he has "unique and specialized knowledge particularly tailored to the accused products that is relevant to not only product development, engineering and architecture, but also key areas involving finance, sales, marketing and management that he could testify to, if called at trial." *Id.* Mr. Glass was, according to IV, responsible for SimpliVity team members in India and their product development, meaning he can provide testimony as to that development, "which otherwise might not be available in the United States." *Id.* at 7. HPE has not controverted any of these factual allegations. Accordingly, the Court agrees with IV that Mr. Glass likely has relevant knowledge qualifying him as a potential witnesses. And because he lived in Texas, this Court has the authority to compel his testimony.

IV also specifically identifies Marcel Guerin as a former Solutions Architect for SimpliVity from 2015–2018 living in Houston, Texas. ECF No. 61 at 7. According to IV, Mr. Guerin helped build and demonstrate SimpliVity solutions to educate customers, partners, and internal employees on the functionality and benefit of the SimpliVity systems. *Id.* In IV's opinion, this "enables him to provide testimony relating to the technical functionality of the products as well as how they are built, tested, sold and the type of internal and customer trainings that take place." *Id.* The Court is less confident Mr. Guerin has the credentials and experience to qualify him as a potential witness fit for consideration under this factor.

In addition, IV attached an exhibit identifying other third-party witnesses within this Court's subpoena power, distilling their purportedly relevant knowledge from publicly available evidence. *See* ECF No. 61 at 7. HPE responds that IV has offered no proof that any of these

witnesses, including Mr. Glass and Mr. Guerin, "have knowledge relevant to this case . . . and none are likely to testify at trial." ECF No. 67 at 3. HPE also remarks that most are in Houston, "which is outside the Court's absolute subpoena power." *Id.* This Court has consistently held, however, that its subpoena power extends to the edges of Texas and, in any event, this is not the stage at which this Court will determine whether a witness would "incur substantial expense" if commanded to testify. Fed. R. Civ. P. 45(c)(1)(B)(ii). The Court agrees with HPE, however, that it is difficult for the Court to discern from short blurbs in a person's LinkedIn profile alone whether that person should be considered under this factor.

The Court will credit Mr. Spitzer's location in Massachusetts and Mr. Glass location in Texas to find that this factor is neutral. The Court finds it difficult to discern the degree of relevance of all the other former HPE employees IV has identified such that they may be considered potential witnesses. *See* ECF No. 61-9. The Federal Circuit has cautioned this Court from discounting potential witnesses—like prior artists—without conducting "individualized, case-by-case consideration." *In re Hulu, LLC*, No. 2021-142, 2021 U.S. App. LEXIS 22723, at *9 (Fed. Cir. Aug. 2, 2021) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964)). That guidance, however, does not hint at how courts should otherwise discern between a person likely to testify and one unlikely to testify without resorting to the court's experience or arbitrary, but necessary, line-drawing. Here, the Court is satisfied that Mr. Spitzer and Mr. Glass fall firmly on the side of likely potential witnesses. Because the Court does not have the same level of confidence for those other former HPE personnel, the Court will disregard them (though that leaves its ultimate conclusion unchanged).

3.    Cost of Attendance of Willing Witnesses

"The convenience of witnesses is the single most important factor in the transfer analysis." *Fintiv*, 2019 U.S. Dist. LEXIS 171102, at *17. The Fifth Circuit has established the "100-mile

rule," providing that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05.

The Federal Circuit has held that, where witnesses would be required to travel a significant distance no matter where they testify, those witnesses will only be slightly more inconvenienced by having to travel to, for example, California, compared to Texas. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317); *In re Genentech*, 566 F.3d at 1344 (stating that the 100-mile rule should not be "rigidly" applied in the context of foreign witnesses). It has opined elsewhere that "[t]he comparison between the transferor and transferee forum is not altered by the presence of other witnesses and documents in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014); *In re Google LLC*, No. 2021-170, 2021 U.S. App. LEXIS 29137, at *12 (Fed. Cir. Sept. 27, 2021) ("[W]hen there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-convenience factor favors transfer."). And, in yet other cases, it has considered only hypothetical travel-time statistics, and not distance, under this factor. *See, e.g.*, *In re Google LLC*, 2021 U.S. App. LEXIS 29137, at *12.

The Federal Circuit has recognized that "an employer's cooperation in allowing an employee to testify may diminish certain aspects of inconvenience to the employee witness (for instance, the employee is not acting contrary to their employer's wishes)." *In re Hulu,* No. 2021 U.S. App. LEXIS 22723, at *13. Elsewhere it has stated that inconvenience is not attenuated *at all* when the witnesses are employees of the party calling them. *See, e.g.*, *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1319 (Fed. Cir. 2021).

HPE asserts that the "vast majority of HPE witnesses familiar with the design and development of the accused functionality of the SimpliVity solutions . . . live and work in the [DMA]." ECF No. 38 at 8. HPE specifically identified Mr. Olson and Mr. Glade, referred to above, as living and working in Massachusetts. ECF No. 38 at 3. Mr. Olson provided a declaration stating that "[a]lmost all of the former SimpliVity employees that still work at HPE live and work in Massachusetts," but failed to identify them or what relevant knowledge they may have. ECF No. 38-3 ¶ 6. He also represented that one former developer, presumably still working for HPE, lives in California and three former engineers live in New York, Florida, and North Carolina. *Id.* And, as mentioned above, there is a small U.S.-based customer support team with members in Massachusetts, Colorado, and North Carolina. *Id.* ¶ 7.

IV downplays Mr. Olson and Mr. Glade's relevance, arguing that their testimony will only be limited to the "historical" implementation of "limited aspects of the accused products" because neither "has worked with the accused products for at least two years." ECF No. 61 at 8. Yet HPE notes that his testimony will still be relevant "with respect to IV's claim for past damages for SimpliVity products sold before the second half of 2020." ECF No. 38 at 4 n.3. Moreover, Mr. Olson has attested that he is "one of the most knowledgeable U.S.-based HPE engineers on the overall functionality of the data path." ECF No. 67 at 4. Based on HPE's representations, the Court is convinced that Mr. Olson and Mr. Glade will have relevant knowledge sufficient to qualify them as potential witnesses. Accordingly, their presence in Massachusetts weighs in favor of transfer. The Court will not credit the convenience of those engineers whom HPE and Mr. Olson have not elaborated upon, much less named; without more information on these engineers, the Court cannot reasonably weigh their relevance.

IV also notes that HPE's initial disclosures identify three other witnesses with relevant knowledge. First, Dan Hunter works on HPE's GreenLake service but lives and works in Roseville, California. ECF No. 61 at 8. Second, Diana Garcia is responsible for SimpliVity financial report and, according to HPE, lives and works from Mexico. *Id.* at 9. Because these two witnesses reside remote from this District and the DMA, their convenience is accorded little weight. *In re Toyota Motor Corp.*, 747 F.3d at 1340. (The Court reaches the same conclusion for IV's personnel in Bellevue, Washington and Los Altos, California. ECF No. 61 at 9 & n.4.)

Third, HPE disclosed Mr. Faibish as having information with respect to sales and marketing, but in his deposition, he represented that he is not involved in either. ECF No. 61 at 9. For these reasons, and because it appears HPE has not cited him or his convenience as being relevant to the transfer analysis, the Court will also disregard Mr. Faibish's convenience under this factor.

IV also argues that two HPE employees that HPE did not identify, J.P. Bovaird and Kristen Reyes, have knowledge relevant to SimpliVity sales. Mr. Bovaird is an HPE Enterprise Sales Director residing in Southlake, Texas; according to IV, he has been in "Director-level sales roles at HPE for over six years with extensive experience in building sales teams focused on HPE's hyperconverged platforms and on SimpliVity in particular." ECF No. 61 at 9. He was also the "former CTO of the Storage Division of HPE's Asia, Pacific & Japan region." ECF No. 61 at 9–10. The Court cannot discern sufficient involvement with SimpliVity from his LinkedIn profile, which merely refers to SimpliVity once, to justify counting him as a potential witness. ECF No. 62-9 at 173–79. His position as former CTO seems of little relevance when he held that role before HPE acquired SimpliVity. If the Court deemed Mr. Bovaird a relevant, potential witness, that would be little more than speculation.

16

Ms. Reyes is the Manager of Digital Marketing Activation for HPE, lives in Houston, and has led "various HPE marketing teams for roughly 18 years, focusing on marketing HPE's product portfolio via digital media channels." ECF No. 61 at 10. She and her team purportedly "get[] eyeballs on all customer-facing content" for SimpliVity and GreenLake and other HPE products." ECF No. 61 at 10. In IV's view, these potential witnesses "are uniquely situated to provide relevant testimony as to the sales and marketing of the accused products." ECF No. 61 at 10. Like that of Mr. Bovaird, Ms. Reyes's LinkedIn profile does not betray a depth of knowledge as to SimpliVity. She purportedly drove "the overall digital marketing strategy" for SimpliVity, but also for HPE Storage, Servers, Security, and Synergy. ECF No. 62-9 at 206–07. Again, the Court finds that whether Ms. Reyes would constitute a potential witness is merely speculative.

IV further identifies Dilip Verma of Austin, Texas as having relevant knowledge. Mr. Verma was an Engineering Section Manager for HPE working on SimpliVity development out of Bangalore before moving to Austin, at which point he was promoted to Senior Engineering Manager. ECF No. 61 at 10. Because Mr. Verma's profile lists HPE SimpliVity as one of his product areas during his role as an "Engineering Section Manager" in Bangalore, and because there is no dispute that HPE transferred maintenance and development of SimpliVity to a team in Bangalore in 2020, *see* ECF No. 62-9 at 88–91, the Court finds it reasonable to conclude that Mr. Verma will likely have relevant information sufficient to qualify him as a witness at trial. As his location is currently listed in Austin, the Court finds that transferring this case to the DMA would inconvenience him. Accordingly, Mr. Verma's convenience weighs against transfer.

IV also names John Gromala of Tomball, Texas, as a potential witness; Mr. Gromala was, from 2013 to 2019, a Senior Director of Product Management for the Software Defined and Cloud Product lines, including mainly SimpliVity. ECF No. 61 at 10. According to IV, "he has presented

as a subject matter expert on the technical features, configurations, and capabilities of the accused products many times." ECF No. 61 at 11. Mr. Gromala is now the Director of the GreenLake product portfolio, leading IV to posit that he has "important insight as to how the accused products were developed into HPE's current GreenLake for SimpliVity offerings." ECF No. 61 at 11. While Mr. Gromala's LinkedIn profile lists SimpliVity as one of many products he oversaw before 2019, the Court finds that it would be speculative to say that he qualifies as a potential witness for trial. *See* ECF No. 95-9 at 161–62.

In addition, IV identified for HPE Matt Haron of Houston. ECF No. 61 at 11. According to IV, Mr. Haron tests the SimpliVity products as they are developed, has written dozens of articles on SimpliVity, featured on HPE's blog, and has demonstrated and architected solutions for customers. ECF No. 61 at 11. HPE's website even labels Mr. Haron as an "expert." *Id.* But HPE's discovery responses state that his knowledge comes from "engineers or other HPE documentation"—according to HPE he does not participate in the research, design, or development of SimpliVity. ECF No. 61 at 11. The Court finds that HPE's explanation for Mr. Haron's knowledge on these topics to be persuasive. Accordingly, the Court will not accord his convenience much, if any weight.

Mr. Olson and Mr. Glade's presence in Massachusetts weighs in favor of transfer; Mr. Verma's presence in Austin weighs against transfer. The Court, therefore, finds that this factor favors transfer, but only slightly so.

### 4.   Practical Problems

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "[G]arden-variety delay associated with transfer is not to be taken into consideration when

ruling on a § 1404(a) motion to transfer" but delay in already protracted litigation may account for some weight. *In re Radmax*, 720 F.3d at 289.

"Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). The interests of justice may be best served by transferring ancillary matters pending in other forums to the forum of the main action, particularly if the main action is complex. *Bank of Texas v. Computer Statistics, Inc.*, 60 F.R.D. 43, 45 (S.D. Tex. 1973). "[T]he ability to transfer a case to a district with numerous cases involving some overlapping issues weighs at least slightly in favor of such a transfer." *In re Apple*, 979 F.3d at 1344. But district courts should not rely "on considerations of judicial economy arising after the filing of the lawsuit or the transfer motion," such as, for example, suits filed in the transferor district after a request to transfer. *In re Netscout Sys.*, No. 2021-173, 2021 U.S. App. LEXIS 30500, at *12 (Fed. Cir. Oct. 13, 2021). Further, "the mere co-pendency of infringement suits in a particular district" does not automatically tip transfer in one direction or the other. *Id.* at *13.

This factor is neutral. This case has not yet proceeded to a *Markman* hearing and so has not yet matured to a stage where this factor would counsel against transfer. With no other practical problems before it, this Court concludes that this factor is neutral.

## C. Public Interest Factors

### 1. Court Congestion

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved." *Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343. A faster average time to trial means more efficient and economical resolutions of the claims at issue. That said, "[a] court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *In re*

19

*Apple*, 979 F.3d at 1344. Moreover, when other relevant factors weigh in favor of transfer or are neutral, "then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

The Federal Circuit has held that a difference in the number of pending cases between the transferor and transferee forums is "too tenuously related to any differences in speed by which these districts can bring cases to trial." *Id*. In another case, it has opined that a "proper" analysis "looks to the number of cases per judgeship and the actual average time to trial." *In re Juniper Networks, Inc.*, No. 2021-156, 2021 U.S. App. LEXIS 29812, at *8 (Fed. Cir. Oct. 4, 2021).

The Federal Circuit has also held that, in the event time-to-trial statistics favor one district over another, the court must "point to any reason that a more rapid disposition of the case that might be available in Texas is worthy of important weight." *In re Juniper Networks*, 14 F.4th at 1322; *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380–81 (Fed. Cir. 2021).

HPE concedes that Lex Machina reflects DMA's median time-to-trial being longer than this District's by more than 200 days. ECF No. 38 at 10. That this is the most speculative factor does not *per se* render this factor neutral, as HPE would suggest. *See id.* Were that true, why wouldn't the Fifth Circuit have omitted it from the § 1404(a) analysis altogether? Given HPE's concession as to time-to-trial statistics, this factor weighs against transfer.

### 2. Local Interests

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent case "are not a fiction." *In re Samsung*, 2 F.4th 1380. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La*

*Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). But courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Where the movant has a "significant presence" in the transferor forum, this factor "heavily" favors transfer where the transferee forum has a "significant connection to the event that gave rise to [the] suit." *In re Apple*, 2021 U.S. App. LEXIS 33788, at *14–15. Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)).

HPE argues that the present case has a "far greater factual connection to the District of Massachusetts than to this District," relying on the assertion that the accused SimpliVity solutions were designed and developed primarily in the DMA. ECF No. 38 at 10. IV responds that any local interest the DMA had dissipated with HPE shuttering the SimpliVity facility in Westborough, Massachusetts. ECF No. 61-3 at 16:19–17:13 (testimony from Mr. Faibish that "the Westborough office is closed and not reopening"). According to IV, "[t]he few former SimpliVity employees still in the DMA either work from home or have been 'assigned' to an HPE technology recycling facility operated by HPE Financial Services and to which none of HPE's 30(b)(6) witnesses have ever been." ECF No. 61 at 14. In reply, HPE notes that it has a "substantial facility in Andover, Massachusetts, that employs hundreds of employees." ECF No. 67 at 5.

IV argues that this District has a local interest because the SimpliVity headquarters is in Houston, Texas, where HPE's worldwide headquarters are located. ECF No. 61 at 14. IV supports this contention with a screenshot of HPE SimpliVity's LinkedIn page identifying its location as Houston. ECF No. 62-15. IV also alleges that there are "dozens of HPE employees and former SimpliVity/HPE employees that work or have worked with the accused products located throughout Texas" and most of HPE's executive positions are located in Texas. ECF No. 61 at 15.

The Court notes HPE's vast general presence in this State and finds that that cannot be ignored under the local interest factor. But the Court is bound to recognize Massachusetts's interest in this case. This Action "calls into question the work and reputation of several individuals residing in or near" the DMA, like Mr. Olson and Mr. Glade. Their presence in or near the DMA is not affected by the fact that HPE shuttered the office from which the SimpliVity product had been developed and maintained. That said, the strength of that local connection has dissipated to some degree through HPE moving maintenance and development of the SimpliVity product abroad. And while the Court appreciates that there are HPE personnel and former HPE personnel in Texas who have worked with SimpliVity, this factor focuses on where the accused functionality was "research[ed], design[ed], and develop[ed]." *In re Apple Inc.*, No. 2022-128, 2022 U.S. App. LEXIS 10947, at *9 (Fed. Cir. Apr. 22, 2022). Without more specifics as to those Texas-based personnel in that kind of conduct, the Court cannot counterbalance the strength of SimpliVity's connection to Massachusetts. Accordingly, this factor favors transfer.

### 3. Familiarity of the Forum with Law-At-Issue

The parties do not dispute that this factor is neutral and the Court agrees.

### 4. Conflict of Laws

The parties do not dispute that this factor is neutral and the Court agrees.

## IV. CONCLUSION

Having considered the private and public interest factors, Court's conclusions for each factor is summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Neutral |
| Availability of compulsory process to secure the attendance of witnesses | Neutral |
| Cost of attendance for willing witnesses | Weighs slightly in favor of transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Neutral |
| Administrative difficulties flowing from court congestion | Weighs against transfer |
| Local interest | Favors transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

Five factors are neutral, local interest favors transfer, cost of attendance for willing witnesses slightly favors transfer, and the court-congestion factor weighs against transfer. Given the foregoing, the Court finds that HPE has not shown that the DMA is clearly more convenient than this District. HPE's Motion at ECF No. 38 is therefore **DENIED**.

SIGNED this 29th day of April, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE